**TOLEDO TRUST CO. v. OCCIDENTAL LIFE INS. CO., LOS ANGELES, CAL.**

No. 4367.

District Court, N. D. Ohio, W. D.

May 8, 1940.

Donald Melhorn, of Toledo, Ohio, for plaintiff.

Milo J. Warner, of Toledo, Ohio, for defendant.

KLOEB, District Judge.

Plaintiff is assignee of an insurance policy on which it is seeking to recover $10,000. Defendant admits its liability on the policy to the extent of $7,889.

On July 1, 1929, Walter Hamilton Snyder took out a ten payment, ten year endowment policy in the sum of $10,000 with the Register Life Insurance Company, an Iowa corporation, and named Virginia K. Snyder, his wife, the beneficiary. On August 27, 1929, this policy was assigned to plaintiff, as trustee, by both the insured and beneficiary. The assignment expressly gave the trustee the authority to exercise all rights which the assignors had in and under the policy, including the right to exercise all options and privileges mentioned therein and the right to collect the proceeds of the policy at maturity.

Early in 1934, the Register Life Insurance Company was found to be in an unsound financial condition and was taken over by the Commissioner of Insurance of the State of Iowa. On April 7, 1934, a decree was entered in the District Court of Iowa for Scott County which dissolved the company and appointed as receiver the Commissioner of Insurance.

On August 3, 1934, plaintiff wrote the receiver stating that the insured did not intend to pay any more premiums on the policy but had decided to avail himself of the provisions of Option C thereof, which reads as follows: "This policy may be continued in force as paid-up term insurance, from the due date of the premium which is in default, without participation in the surplus earnings of the Company and without loan values, for an amount equal to the sum of the face amount of the policy and any existing paid-up additions, less any indebtedness hereunder. Whenever the 'net cash value' is sufficient to continue the paid-up term insurance beyond the endowment period, the remainder shall be applied on the purchase of paid-up, non-participating pure endowment. The pure endowment shall be paid in one sum at the end of the endowment period, if the Insured be living."

On August 8, 1934, the receiver replied stating that no change whatsoever could be made during the period of the receivership and that all matters would be held in abeyance until a reinsurance agreement had been reached with some company.

On September 25, 1934, effective as of September 26, 1934, a written reinsurance agreement was entered into between the receiver and the Guaranty Life Insurance Company, an Iowa corporation, wherein the latter assumed, with certain limitations, the liability of Register Life Insurance Company under all policies and contracts which were outstanding and in force at the date of the receivership.

On November 6, 1934, plaintiff was notified by the secretary of the Guaranty Life Insurance Company that unless the July 31, 1934, premium was paid the policy would automatically go on extended term insurance under Option C thereof. The premium was not paid and the policy became a paid-up term insurance policy in accordance with the terms of the policy and the reinsurance agreement. At that time the surrender value of the policy was $4,134.20, plus accumulated dividends amounting to $151.90.

On October 30, 1937, defendant, the Occidental Life Insurance Company, a California corporation, entered into a written agreement whereby it assumed all the obligations of the Guaranty Life Insurance Company under the reinsurance agreement.

The insured died on December 29, 1938. The converted policy was in full force and effect on that date. Plaintiff duly notified defendant of the death of the insured and performed all other conditions precedent to recovery. Plaintiff claimed $10,000, but defendant refused to pay that amount. Defendant did offer to pay $7,889, but plaintiff refused to accept that amount. Defendant has since at all times been ready and willing to pay the latter amount.

The reinsurance agreement placed a policy lien of fifty per cent of the net equity on each policy. On the policy here in question, this would amount to $2,085, which together with interest of $26.41 to July 31, 1934, left a balance of $2,174.69 to purchase term insurance. Defendant claims that the amount of the lien and interest should also be deducted from the face amount of the original policy, which would leave $7,889 as the amount of term insurance to be purchased.

Plaintiff claims, first, that the waiver of lien provision of the reinsurance contract applies to the policy here in question, and second, that the terms of the reinsurance agreement and Option C of the original policy show that the amount of the lien was to be deducted from the surrender value only.

Paragraph 11 of the reinsurance agreement contains the waiver provision referred to and reads as follows: "Subject to the provisions of this contract, the Company will waive the policy lien and will not deduct the principal of the lien, or any accumulated or accrued interest thereon, from any claim for death occurring on or prior to December 31, 1944, under any policy in force at date of death, irrespective of whether such death occurred prior or subsequent to the effective date of this contract. From any claim for death occurring after December 31, 1944, the Company shall deduct the principal of the lien, together with any accumulated or accrued interest."

It is necessary to examine another paragraph in the reinsurance agreement to determine whether the policy in question is excluded from the paragraph just quoted. Paragraph 25 deals with the application of the lien to policies converted into term insurance, and reads in part as follows: "Any policy which shall lapse after the date of receivership and prior to the expiration of the moratorium (Dec. 31, 1938) provided in Paragraph 23 hereof (except policies which were in their grace period at date of receivership) and shall not have been reinstated, shall be restricted to the option of taking fractional paid-up insurance or extended insurance for the amount and/or term which at the time such policy lapsed the surrender value of such policy less (a) any indebtedness and accrued interest thereon and (b) the then policy lien. and accrued interest, will purchase and shall thereafter not be subject to lien nor be affected by any change in lien. The provisions of the respective policies in regard to policy indebtedness shall govern in determining the adjustment of the term and/or amount of extended insurance because of such lien. * * *"

■■ This provision clearly shows that it was intended that the lien would be deducted from the surrender value at the time the policy was converted into term insurance. And the last sentence quoted makes it necessary to look to the original policy to determine the amount of term insurance. It will be seen from the provision in the original policy entitled "Option C," which is quoted above, that any indebtedness on the policy is to be deducted from the face

amount of the term insurance, as well as from the surrender value. So the question is whether the policy lien is to be treated as a policy indebtedness. If it is a policy indebtedness, then it is to be deducted from both the surrender value and from the face amount of term insurance to be purchased. If it is not such an indebtedness, then paragraph 25 would seem to limit it to deduction from the surrender value only. Some light is thrown on this question by paragraph 6 of the reinsurance agreement which reads in part as follows: "there is hereby imposed on each policy, * * * in addition to any existing policy indebtedness on such policy, an obligation *similar to a policy loan* which is designated herein as a lien. * * *" (Italics added.) From this it will be seen that the reinsurance agreement specifically states that the policy lien is a policy loan. The reinsurance agreement is controlling on both the insured and the reinsurer. The reinsurer had the right to impose a lien in any way which was satisfactory to the Commissioner of Insurance. It was imposed as an obligation similar to a policy loan. Since a policy loan would be deducted from both the surrender value and the face amount of the policy in determining the amount of term insurance under Option C of the original policy, it follows that the policy lien was also intended to be deducted from both.

■ Furthermore, the deduction was made at the time the policy was converted into term insurance. A new face value was determined at that time. It seems clear, therefore, that the waiver provision in paragraph 11 was not intended to apply to policies converted into term insurance, since the lien would already have been deducted. The policy in force at the death of the insured was a new policy for a smaller face value than the original policy. The waiver provision would seem to apply only to cases where the premiums were still being paid, where the original policy was still in force. Such policies would not be affected by the other provisions in the reinsurance agreement, and the lien would not have been deducted previous to the death of the insured. But it seems hardly reasonable to assume that the intention was to deduct the amount of the lien from the face value of the policy when converted into term insurance, and then add that amount if the insured died before December 31, 1944. I do not think the waiver

provision was intended to apply to a converted policy and think that paragraph 25 of the reinsurance agreement excludes such policies from the waiver provision.

The foregoing moves me to hold that there was in effect at the time of the insured's death a term policy in the amount of $7,889. I understand that this sum has been paid into court by the defendant. Plaintiff is entitled to this amount, without interest, and plaintiff is charged with costs.

Defendant will have ten days in which to file findings of fact and conclusions of law in accordance with this opinion, and plaintiff will have five days thereafter in which to make objections and suggested additions.